UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ABDO ALMASMARY,

                        Plaintiff,            **MEMORANDUM AND ORDER**

       -against-                          07-CV-1868 (SLT) (JMA)

THE CITY OF NEW YORK, *et al.*,

                        Defendants.
------------------------------------------------------------x
**TOWNES, United States District Judge:**

        Plaintiff, Abdo Almasmary, a former New York City police officer of Middle Eastern descent, brings this action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter, "Title VII"), 42 U.S.C. § 1983, New York State Executive Law § 296 and New York City Administrative Code § 8-502, alleging that defendants – the City of New York and New York City Police Commissioner, Raymond W. Kelly – discriminated against him on the basis of his race, color and national origin and subjected him to a hostile work environment. Defendants now move to dismiss some of plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) that plaintiff's Title VII claims are time-barred to the extent that they allege acts which occurred earlier than December 9, 2005; (2) that plaintiff's claims pursuant to 42 U.S.C. § 1983 should be dismissed for failure to allege personal involvement on the part of Commissioner Kelly, the only defendant named in those claims; and (3) that plaintiff's claims pursuant to State and City law are time-barred. For the reasons set forth below, defendants' motions are granted in part and denied in part.

        *Background*

        This "Background" section is drawn entirely from the allegations in the Amended Complaint, the truth of which is assumed for purposes of this motion to dismiss.

Plaintiff is of Middle Eastern decent and immigrated to the United States at the age of four. Amended Complaint at ¶13. In 2000, he became a police officer with the New York Police Department ("NYPD") *Id.*, at ¶14. Plaintiff served in that capacity for approximately six years, during which time he received above-average ratings on his performance evaluations and numerous merit citations. *Id.*, at ¶16.

After September 11, 2001, plaintiff was recruited by NYPD's Intelligence Division, which he assisted in undercover investigations into potential terrorist activity within the Middle Eastern communities of New York City. *Id.*, at ¶21. The plaintiff contends that in recognition of his successful undercover work he was "promised" a position within the Intelligence Division. *Id.*, at ¶26. The Amended Complaint does not specify precisely when this promise was made, but alleges that plaintiff was sent to the Berlitz Language School to learn Farsi for the position in early 2003. *Id.*, at ¶32. Although plaintiff took an examination and interviewed with the Intelligence Division four separate times, he was never offered a position. *Id.*, at ¶¶27, 32. Plaintiff alleges, on information and belief, that less qualified Caucasian applicants were transferred into the Intelligence Division, *id.*, at ¶33, but does not specify the dates on which these applicants were transferred.

On April 2, 2004, a police sergeant accused plaintiff of filling his personal car with NYPD gasoline. *Id.*, at ¶36. Plaintiff told the sergeant that he had the "appropriate authorizations," *id.*, but now admits that this was incorrect and alleges that he was misled by unspecified sources in the Intelligence Division, who told him that he was authorized to use his own car for NYPD business. *Id.*, at ¶34. Plaintiff denies that he was ever told that he had to file paperwork and obtain formal approval. *Id.*, at ¶35.

On January 11, 2005, plaintiff was served with Charges and Specifications that accused him of stealing gas on two occasions: April 2, 2004, and April 4, 2004. *Id.*, at ¶38.[1] On or about January 20, 2005, plaintiff reached a "Negotiated Settlement" with the Department Advocate's office, which recommended that plaintiff be penalized for the theft by forfeiting twenty-six vacation days and being placed on "Dismissal Probation" for one year. *Id.*, at ¶39. However, the Assistant Commissioner of the Department Advocate's Office refused to approve the settlement, believing it to be too lenient. *Id.*, at ¶41. Over the next few months, a new settlement agreement was negotiated, under which plaintiff was suspended for one month without pay and benefits and was placed on Dismissal Probation for one year. *Id.*, at ¶42. This second, more severe, Negotiated Settlement was approved by defendant Kelly on April 4, 2005. *Id.*

On September 7, 2005, plaintiff was interrogated by two detectives from the NYPD's Internal Affairs Bureau ("IAB"). *Id.*, at ¶43. These detectives questioned him not only about his authorization to use his personal vehicle for police business, but also about a "PA-15" Pre-Employment Application he had completed as part of the NYPD hiring process. *Id.*, at ¶44. First, the detectives accused plaintiff of failing to disclose on the PA-15 that he held an "off the book" job in an ice cream parlor between 1986 and 1989, when plaintiff was in high school. *Id.*, at ¶45. According to plaintiff, the owner of the ice cream parlor was from Yemen and was suspected of involvement in terrorist activities between the years 1997-2004. *Id.*, at ¶46. The detectives asked plaintiff whether the owner was his uncle, *id.*, at ¶47, and asked plaintiff, "Are you a terrorist?" and "Do you want to do anything to this country?" *Id.*, at 51. The detectives

---

[1] Plaintiff has not alleged any facts relating to the April 4, 2004, incident.

also questioned plaintiff about his past employment at Citibank, accusing him of intentionally failing to disclose that he was dismissed from his job at that bank. *Id*., at ¶50.

On October 4, 2005, based on this interview, an IAB Captain recommended that the NYPD seek to decertify plaintiff. *Id*., at ¶52. That recommendation was approved by an Inspector in the Applicant Processing Division and the Chief of the Personnel Bureau on February 15, 2006, and March 24, 2006, respectively. *Id*., at ¶53-54. In mid-April 2006, plaintiff was notified that he was being placed on Level II Disciplinary Monitoring. *Id*., at ¶55. His firearm and shield were confiscated, he was placed on "modified duty," and he was assigned to work in Brooklyn Central Booking. *Id*., at ¶¶56-57, 62.

On April 26, 2006, Commissioner Kelly approved the commencement of the decertification proceedings. *Id*., at ¶58. On May 2, 2006, the Department of Citywide Administrative Services ("DCAS") requested that plaintiff respond to allegations that he had omitted pertinent facts from his employment application. *Id*., at ¶63-64.[2] In response to the DCAS requests, plaintiff claimed that he had disclosed the ice cream parlor job during the "hiring interview." *Id*., at ¶65. However, plaintiff tacitly admitted failing to disclose that he had been dismissed from Citibank "due to missing funds from the ATM room," stating that he misunderstood a question in the NYPD application and believed that termination was not disciplinary action. *Id*., at ¶66.

Plaintiff was terminated from the NYPD on May 25, 2006, after being "marked not qualified by the Deputy Commissioner, Department of Citywide Administrative Services, because he falsified official New York City employment documents and omitted pertinent

---

[2]The DCAS amended its initial correspondence on May 4, 2006, to include allegations that plaintiff had submitted a "fraudulent document" during the employment application process. *Id*., at ¶64.

fact(s)." *Id*., at ¶67. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 5, 2006. *Id*., at ¶11. He received a right-to-sue notice on February 5, 2007, and on May 4, 2007, he commenced this action. *Id*., at ¶12.

*Procedural History*

Plaintiff's original complaint named six defendants: The City of New York ("the City"), the NYPD, NYPD Commissioner Raymond W. Kelly, the two IAB officers who interviewed plaintiff on September 7, 2005, and the sergeant who accused him of misappropriating gasoline. That complaint contained nineteen causes of action, including several claims for retaliation. On July 18, 2007, before defendants filed any responsive pleadings, the plaintiff amended his complaint. The Amended Complaint names only two defendants – the City of New York and Commissioner Kelly – and contains only eight causes of action.

The first two causes of action in the Amended Complaint allege that defendants violated Title VII of the Civil Rights Act of 1964. The first cause of action accuses the City of engaging in a "pattern and practice" of "race, color, and national origin discrimination." *Id*., at ¶¶ 75-76. The second cause of action charges that the City created a hostile work environment. Neither cause of action specifies which acts form the basis for plaintiff's Title VII claims.

The third and fourth causes of action advance claims pursuant to 42 U.S.C. §1983 against Commissioner Kelly. The third cause of action alleges that Kelly, acting under color of state law, "personally interfered with and deprived plaintiff of his constitutional rights" by discriminating against him on the basis of race, color and national origin. The fourth cause of action alleges that Kelly violated plaintiff's constitutional rights by creating, or tolerating the existence of, a hostile work environment.

The remaining four causes of action contain claims under state and city laws. The fifth and sixth causes of action allege race, color, and national origin discrimination and hostile work environment, respectively, in violation of New York State Executive Law § 296. The seventh and eighth causes of action allege race, color and national origin discrimination and hostile work environment, respectively, in violation of New York City Administrative Code § 8-502.

### *The Instant Motion*

Defendants now move for partial dismissal of the action on three grounds. First, defendants argue that the first two causes of action, alleging Title VII violations, are time-barred. Second, defendants assert that plaintiff's §1983 claims against defendant Kelly should be dismissed because Commissioner Kelly was not personally involved in the constitutional violations. Third, defendants argue that the remaining causes of action are largely time-barred by operation of the statutes of limitations relevant to New York State Executive Law §296 and New York City Administrative Code §8-502. These arguments, and plaintiff's responses thereto, are discussed in detail in the discussion below.

## DISCUSSION

### *The Rule 12(b)(6) Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss an action for failure to state a claim upon which relief may be granted. In considering a Rule 12(b)(6) motion, a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Erickson v. Pardus*, 551 U.S. 89, ___, 127 S.Ct. 2197, 2200 (2007); *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). A court must then determine whether a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

6

*Twombly*, 550 U.S. 544, ___, 127 S.Ct. 1955, 1974 (2007). Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint ... or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), a court deciding such a motion "is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

### *Title VII Claims*

Defendants' first argument, which seeks to limit the scope of plaintiff's two Title VII causes of action, relates to the time requirements set forth in 42 U.S.C. § 2000e-5(e)(1). This statutory provision "specifies with precision" the time period within which an aggrieved individual must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). The time period varies, depending on whether the individual files his charge directly with EEOC or with a state or local agency. In New York, which has both state and local fair employment agencies, an individual who initially files a grievance with the state or local agency must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred," or within 30 days after receiving notice that the state or local agency has terminated the proceeding, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1). If a charge is filed solely with the EEOC, it must be filed within 180 days after the alleged unlawful employment practice occurred. *Id.*

In addressing the issue of whether an EEOC charge was timely filed, one must "identify with care the specific employment practice that is at issue." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, ___, 127 S.Ct. 2162, 2167 (2007). As both parties recognize, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), distinguished, for purposes of Title VII's

timely filing requirements, between claims alleging discrete acts of discrimination and claims alleging a hostile work environment. "A discrete act of discrimination is an act that in itself 'constitutes a separate actionable "unlawful employment practice"' and that is temporally distinct." *Ledbetter*, 127 S.Ct. at 2175 (quoting *Morgan*, 536 U.S. at 114). Examples of discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114. "A hostile work environment, on the other hand, typically comprises a succession of harassing acts, each of which 'may not be actionable on its own.'" *Ledbetter*, 127 S.Ct. at 2175 (quoting *Morgan*, 536 U.S. at 114).

Since one can typically identify a specific date on which a discrete act of discrimination "occurred," *Morgan* directs that this date be used in determining the timeliness of an EEOC charge relating to a discrete act. *Id*., 536 U.S. at 110. "A party, therefore, must file a charge within ... 300 days of the date of the act or lose the ability to recover for it." *Id*. If a party fails to do so, that discrete, discriminatory act becomes "merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

In contrast, hostile work environment claims, by "[t]heir very nature[,] involve[] repeated conduct" which "occurs over a series of days or perhaps years." *Morgan*, 536 U.S. at 115. This sort of unlawful employment practice "cannot be said to occur on any particular day." *Id*. Accordingly, the *Morgan* Court enunciated a different rule for hostile work environment claims, holding that such a claim is not time-barred if "an act contributing to the claim occurs within the filing period." *Id*. at 117.

Although the first cause of action in plaintiff's Amended Complaint does not allege specific acts of discrimination, defendants assume that this cause of action seeks to recover for every discrete act of race, color or national origin discrimination alleged in the "Background"

section of plaintiff's amended pleading. Defendants argue that a "majority" of these discrete acts took place more than 300 days prior to October 5, 2006 – the date on which plaintiff filed his charge of discrimination with the EEOC. Memorandum of Law in Support of Defendants' Motion for Partial Dismissal of the Amended Complaint ("Defendants' Memo") at 4-5. Accordingly, defendants reason that "[a] majority of plaintiff's allegations concerning discrimination in violation of Title VII are time-barred" by operation of section 2000e-5(e)(1).

Plaintiff tacitly concedes that 42 U.S.C. § 2000e-5(e)(1) precludes him from bringing a Title VII claim with respect to any discrete act of discrimination which occurred prior to December 9, 2005. Letter to Hon. Sandra L. Townes from Eric Sanders, Esq., dated June 30, 2008 ("Plaintiff's Opposition") at 2 ("It is the Plaintiff's position that the period commencing December 9, 2005 ... may be considered for the purposes of establishing claims relating to Title VII race, color and national origin discrimination."). Plaintiff further states that his termination occurred on May 25, 2006, and alleges that this act was the subject of the charge of discrimination filed with the EEOC on October 5, 2006. *Id*. This Court interprets plaintiff's statements as limiting the first cause of action to the termination alone. When limited in this manner, plaintiff's first cause of action is not time-barred because plaintiff's termination occurred within 300 days of the date on which plaintiff filed his charge of discrimination with the EEOC.

In arguing that the second cause of action in plaintiff's Amended Complaint is also time-barred, defendants begin by asserting that "[a] majority of plaintiff's allegations concerning a hostile work environment in violation of Title VII are time-barred as well." Defendant's Memo at 5. Presumably, defendants are asserting that a majority of the acts on which plaintiff's Title VII hostile work environment claim is based occurred more than 300 days prior to the date on

9

which plaintiff filed with the EEOC. While defendants may be correct, this fact alone would not establish that plaintiff's hostile work environment claim is time-barred. As noted above, a hostile work environment claim is not time-barred if any act contributing to the claim occurred within the filing period. *Morgan*, 536 U.S. at 117. Accordingly, to establish that plaintiff's second cause of action was time-barred, defendants would have to establish that all – and not merely a majority – of the acts on which plaintiff's hostile work environment claim are based occurred more than 300 days prior to plaintiff's filing of his EEOC charge of discrimination.

The second paragraph of defendants' argument to dismiss the second cause of action raises an entirely different issue which, although based on *Morgan*, is largely unrelated to the issue of whether the second cause of action is time-barred. Defendants argue that the only acts of discrimination alleged in the Amended Complaint are "discrete acts," and that these acts cannot serve as the basis for plaintiff's Title VII hostile work environment claim. This argument – which, if correct, would compel the dismissal of plaintiff's entire second cause of action – was not mentioned in defendants' pre-motion conference request, and has not been addressed in Plaintiff's Opposition. Accordingly, this Court declines to address it at this juncture.

This Court notes, however, that contrary to defendants' assertion, the Amended Complaint appears to allege police conduct other than discrete acts. For example, plaintiff alleges that the two IAB detectives who interviewed him on September 7, 2005, asked if he was a terrorist or inclined to "do anything to this country." Amended Complaint at ¶ 51. Plaintiff also alleges that in April 2006, before a final decision was made on whether to commence decertification proceedings against him, police officials placed him on Level II Disciplinary Monitoring, removed his firearm and shield and placed him on "modified duty." *Id*. at ¶¶ 55-57. It is not clear whether plaintiff will rely on these alleged acts in support of his hostile work

environment claim or whether the acts on which plaintiff relies will suffice to state such a hostile work environment claim. However, these are questions which are best resolved at the summary judgment stage, after defendants have had the opportunity to probe the basis for plaintiff's Title VII hostile work environment claim. Defendants' motion to dismiss the second cause of action is, therefore, denied.

### *The Section 1983 Claims*

Defendants seek to dismiss Counts Three and Four – the only claims against Commissioner Kelly – on the ground that Kelly was not personally involved in the alleged discrimination and, therefore, cannot be liable under 42 U.S.C. §1983. Section 1983 "provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). In order to maintain a §1983 action, a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and that it "deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Pitchell v. Callan*, 13F.3d 545, 547 (2d Cir.1994). In addition, "it is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d. 880, 885 (2d Cir.1991)). Supervisory liability cannot rest on *respondeat superior* or on "linkage in the ... chain of command." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003).

Defendants argue that the factual allegations in plaintiff's Amended Complaint suggest that Kelly was not personally involved in the discrimination, but merely signed off on

recommendations issued by others. Plaintiff concedes that defendants' argument is correct and agrees to dismiss both of the §1983 claims against Raymond Kelly. Accordingly, defendants' motion to dismiss Counts Three and Four is granted, and Commissioner Kelly is dismissed from this action.

### *The State and City Claims*

Finally, defendants seek to dismiss "[a] majority of plaintiff's claims" under Counts Five through Eight of the Amended Complaint on the ground that they are time-barred under the New York City Human Rights Law, N.Y. City Admin. Code § 8-502 ("NYCHRL"), and the New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL"). Citing *Cunningham v. Consol. Edison, Inc.*, No. CV-03-3522 (CPS), 2006 WL 842914, at * 11, n. 5 (Mar. 28, 2006), for the proposition that claims under the NYHRL and NYCHRL are governed by a three-year statute of limitations, defendants argue that state and city claims arising more than three years prior to May 4, 2004 – that is, three years prior to the commencement of this action – are time-barred. Defendants' Memo at 6. Defendants assert that plaintiff was "denied a transfer to the NYPD Intelligence Division during the period of 2002 through early 2004, after interviewing for the transfer on four separate occasions," *id*., and that state and city claims regarding these denials of transfers are, therefore, time-barred. Defendants also reason that because plaintiff was first "observed stealing NYPD gasoline" on April 2, 2004, any state or city claims relating to the disciplinary action that followed should also be precluded.

Defendants are correct in stating that the limitations period for bringing claims under the NYHRL or NYCHRL is three years. New York City Administrative Code §8-502(d) specifically provides that a civil action under that section must be commenced "within three years after the alleged unlawful discriminatory practice or act of discriminatory harassment or

12

violence." Similarly, "the statute of limitations for actions under New York's Human Rights Law is three years." *Van Zant v. KML Royal Dutch Airlines* 80 F.3d 708, 714 (2d Cir. 1996) (citing N.Y. C.P.L.R. § 214(2)). However, this three-year period of limitations is tolled during the pendency of a complaint with either the New York City Commission on Human Rights ("NYCCHR") or the New York State Division of Human Rights ("NYSDHR"). *Sackey v. City of New York*, No. 04 Civ. 2775 WHP, 2006 WL 337355, at *4 (S.D.N.Y. Feb. 15, 2006) (citing *Penman v. Pan Am. World Airways, Inc.*, 69 N.Y.2d 989, 990, 517 N.Y.S.2d 719, 719 (1987)); *see Pan Am. World Airways, Inc. v. N.Y. State Human Rights Appeals Bd.*, 61 N.Y.2d 542, 549, 475 N.Y.S.2d 256, 259 (1984). Accordingly, without knowing whether plaintiff filed a charge of discrimination with the NYSDHR or NYCCHR and, if so, how long plaintiff's state or local proceedings remained pending, this Court cannot identify the precise demarcation between timely and untimely claims.

In arguing that "[a] majority of plaintiff's claims ... pursuant to ... New York State Executive Law § 296 and New York City Administrative Code § 8-502 are time-barred," Defendants' Memo at 6, defendants make several implicit assumptions. First, defendants assume that plaintiff never filed a charge of discrimination with the NYSDHR or NYCCHR, that the three-year statutes of limitation were not tolled for even one day, and that state and city claims arising more than three years prior to the May 4, 2007, commencement of this action are, therefore, time-barred. Second, defendants assume that plaintiff was not denied a transfer or promotion to the Intelligence Division at any time after "early 2004," *id*., even though plaintiff's Amended Complaint does not specify the dates on which he was denied the transfers or promotions. Third, defendants assume that whatever unlawful employment practices allegedly

13

occurred as a result of plaintiff's filling his car with NYPD gasoline occurred on or about April 2, 2004.

None of these assumptions, however, is substantiated by any evidence. Under New York law, "statute of limitations is normally an affirmative defense ... on which the defendant has the burden of proof." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) (internal citations omitted). Defendants have not sustained that burden, and this Court cannot currently determine whether any of the unlawful employment practices alleged in Counts V through VIII are time-barred. To the extent that defendants develop proof to substantiate their assumptions, they can apply for permission to renew this statute-of-limitations argument upon a motion for summary judgment.

## *CONCLUSION*

For the reasons set forth above, defendants' motion to dismiss Count I of plaintiff's Amended Complaint is denied, based on this Court's understanding that the only unlawful employment action plaintiff seeks to raise in this first cause of action is his termination. Defendants' motion to dismiss Count II is denied. Defendants' motions to dismiss Counts III and IV are granted, and Commissioner Kelly is dismissed from this action. Defendants' motions to dismiss Counts V through VIII are denied without prejudice to applying for permission to renew these motions upon summary judgment if defendants can develop proof to substantiate their statute-of-limitations defenses.

SO ORDERED.

/s/
SANDRA L. TOWNES
United States District Judge

Dated: March 31, 2009
      Brooklyn, New York